ORIGINAL

FILED
AUG 28 2007
U.S. COURT OF FEDERAL CLAIMS

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

UNITED STATES SURETY COMPANY *

and *

AMERICAN CONTRACTORS INDEMNITY COMPANY *

*

Plaintiffs

*

v. No. 07-638 C

*

THE UNITED STATES

*

Defendant

* * * * * * * * * * * *

## COMPLAINT

United States Surety Company and American Contractors Indemnity Company, Plaintiffs, by their undersigned counsel, sue the Defendant, The United States, and state:

1. Jurisdiction is conferred on this Court by the Federal Courts Improvement Act of 1982 (Pub L No. 97-164, 96 Stat 25 (April 2, 1982)). The claim is based on an express written contract with the United States of America. Trial de novo and relief is sought pursuant to Section 10(a)(1) of the Contract Disputes Act of 1978 (41 U.S.C.A. § 609(a)(1)), and not under the Wunderlich Act.

2. Plaintiff, United States Surety Company, is a corporation organized and doing business under the laws of the State of Maryland, having an office and a principal place of business at 20 West Aylesbury Road, Timonium, Maryland 21093.

3. Plaintiff, American Contractors Indemnity Company, is a corporation organized and doing business under the laws of the State of California, having an office and a principal place of business at 9841 Airport Boulevard, 9th Floor,

Los Angeles, California 90045.

4. Both United States Surety Company and American Contractors Indemnity Company are listed on the Department of the Treasury's Listing of Approved Sureties (Department Circular 570) and, therefore, are authorized to issue surety bonds on United States Government projects.

5. On or about April 22, 2005, the United States Government ("Government") and Woodside Construction, Inc. ("Woodside") entered into Contract No. DACW91236-05-C-0039 (the "Contract") for Maintenance Dredging, Lynnhaven River, Virginia Beach, VA (the "Project").

6. Pursuant to the Contract, Woodside, as principal, and United States Surety Company and American Contractors Indemnity Company, as co-sureties (collectively, the "Surety"), provided performance and payment bonds, both numbered 9950, and both in the penal sum of One Million Four Hundred Thirty Five Thousand Three Hundred Dollars ($1,435,300.00), with the Government as obligee.

7. By letter dated December 22, 2005, the Government terminated Woodside for default under the provisions of the Contract, and called upon the Surety to complete the performance of the work called for on the Project pursuant to its obligations under the Performance Bond.

8. On or about December 30, 2005, the Government and the Surety entered into a Takeover Agreement. A copy of the Takeover Agreement is attached hereto and incorporated herein as Exhibit A.

9. Pursuant to paragraph 2 of the Takeover Agreement, the parties agreed, in relevant part, as follows:

> 2. The Government agrees to pay the Surety in the manner provided by the Contract, the unearned contract balance of $800,362.80, earned retainage of $8,085.00 and earned but unpaid Contract funds of $80,394.48, subject to the following conditions:
>
> A. All unpaid earnings of the Principal, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the Principal arising from the project, **except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the performance of or payment for the work called for in the Contract.** (Emphasis added.)
>
> C. **Except as expressly provided herein**, nothing in this Takeover Agreement shall be construed as a waiver or release of any rights of the Government against the Principal or Surety, including but not limited to liquidated damages for delays in completion of the work, except to the extent that such delays may be excused under the provisions of the Contract. (Emphasis added.)

10. As of the date of the Takeover Agreement, the unearned balance of the Contract, as set forth in the Takeover Agreement, was as follows:

| | |
|---|---|
| Unearned contract balance: | $800,362.80 |
| Earned retainage: | 8,085.00 |
| Earned but unpaid contract funds: | 80,394.48 |
| **Remaining Contract Balance** | **$888,842.28** |

11. Accordingly, as of December 22, 2005, Woodside had earned, but the Government had not paid, Eighty Eight Thousand Eight Hundred Seventy Nine Dollars and Forty Nine Cents ($88,879.49).

12. The Surety incurred and paid actual costs and expenses in the aggregate sum of One Million Two Hundred Forty Four Thousand Nine Hundred Twenty

Seven Dollars and Seventy Four Cents ($1,244,927.74) in completing the Project pursuant to the Takeover Agreement.

13. During its performance pursuant to the Takeover Agreement, the Surety received progress payments totaling Five Hundred Two Thousand Sixty Six Dollars and Eighty Cents ($502,066.80) from the Department of the Army.

14. Thus, the Surety incurred Seven Hundred Forty Two Thousand Eight Hundred Sixty Dollars and Ninety Four Cents ($742,860.94) in actual costs and expenses in completing Woodside's scope of work on the Project.

15. The Government assessed the total, aggregate amount of One Hundred Twenty Two Thousand Eight Hundred Dollars ($122,800.00) in liquidated damages, and has deducted that amount from payments due under the Takeover Agreement.

16. Of the total amount of liquidated damages calculated and assessed by the Government against the Surety, Thirty Two Thousand Dollars ($32,000.00) was assessed against the unpaid earnings of Woodside for the period of time prior to the termination of Woodside and the execution of the Takeover Agreement between the Surety and the Government.

17. Pursuant to paragraph 2 of the Takeover Agreement, the Government agreed that all unpaid earnings under the Contract were subject to claims by the Government (including claims for Liquidated Damages) **except in the event that** those unpaid earnings were needed by the Surety to pay for "actual costs and expenses incurred in the performance of or payment for the work called for in the Contract."

18. Pursuant to Paragraph 2 of the Takeover Agreement, the Thirty Two Thousand Dollars ($32,000.00) that was assessed as liquidated damages, beginning on the Contract Completion Date and ending on the Date of Termination, was needed by the Surety to pay for actual costs and expenses incurred in the performance of or payment for the work called for in the Contract and should not have been withheld by the Government.

19. On January 11, 2007, the Surety submitted its claim to Charlotte Hofstetter, Contracting Officer for the Department of the Army, Norfolk District Corps of Engineers. A copy of the claim letter is attached hereto and incorporated herein as Exhibit B.

20. On July 23, 2007, the Surety received the Contracting Officer's final written decision dated July 18, 2007 which denied the Surety's claim in total. A copy of the Contracting Officer's final written decision is attached hereto and incorporated herein as Exhibit C.

21. The Surety has elected to bring this action in this Court in lieu of an appeal to the Armed Services Board of Contract Appeals.

WHEREFORE, United States Surety Company and American Contractors Indemnity Company request that this Court enter judgment in their favor on this claim and against the United States in the amount of Thirty Two Thousand Dollars ($32,000.00), with interest on that amount to run from the date the claim was submitted to the Contracting Officer; reasonable attorney fees under the Equal Access to Justice Act and Contract Disputes Act, as amended; and such other and further relief as this Court may deem just and proper.

Patrick M. Pike
Sean P. Foley
Goldberg, Pike & Besche, P.C.
100 South Charles Street
Tower II, Suite 1001
Baltimore, Maryland 21201
(410) 539-1004 (phone)
(410) 539-2392 (fax)

Dated: August 24th, 2007

# EXHIBIT A

## TAKEOVER AGREEMENT

THIS TAKEOVER AGREEMENT, entered into this 30th day of December, 2005, by and between the United States of America (hereinafter the "Government"), represented by the Contracting Officer signing this Agreement, and United States Surety Company and American Contractors Indemnity Company, as Co-Sureties (the "Surety").

WITNESSETH THAT:

WHEREAS, on April 22, 2005, the Government and Woodside Construction, Inc. (the "Principal") entered into Contract No. DACW91236-05-C-0039, for Maintenance Dredging, Lynnhaven River, Virginia Beach, Virginia Beach, Virginia (hereinafter the "Contract");

WHEREAS, pursuant to the Contract, the Principal and Surety executed performance and payment bonds in the amounts of ONE MILLION FOUR HUNDRED THIRTY FIVE THOUSAND THREE HUNDRED AND 00/100 DOLLARS ($1,435,300.00) and ONE MILLION FOUR HUNDRED THIRTY FIVE THOUSAND THREE HUNDRED AND 00/100 DOLLARS ($1,435,300.00), Bond Nos. 9950, respectively;

WHEREAS, by letter dated December 22, 2005, the Government terminated the Principal for default under the provisions of the Contract, for failure to complete the work timely under the Contract;

WHEREAS, THE Surety will undertake the completion of the Contract in accordance with the terms of the Performance Bond, the contract and this Agreement, provided that the Surety will receive the entire remaining contract balance as more fully defined and set forth below.

WHEREAS, all materials, appliances and equipment of any type remaining on the job site are available for use to the Surety's completing contractor; and

WHEREAS, it is found advantageous and in the best interest of the Government to modify the Contract in accordance with the foregoing:

E-1

NOW THEREFORE, in consideration of the foregoing, the Contract is hereby modified in the following particulars, but in no others:

1. Pursuant to its performance bond, the Surety will take over and cause performance of the work remaining to be performed under the Contract in accordance with the provisions thereof, and as limited and conditioned by this Takeover Agreement.

2. The Government agrees to pay the Surety in the manner provided by the Contract, the unearned contract balance of $800,362.80, earned retainage of $8,085.00 and earned but unpaid Contract funds of $80,394.48, subject to the following conditions:

A. All unpaid earnings of the Principal, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the Principal arising from the project, except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the performance of or payment for the work called for in the Contract.

B. Except in the event that the Surety may become entitled to additional compensation pursuant to the terms of the Contract (e.g., claims, change orders or extras, etc.), the Surety shall not be entitled to be paid any amount in excess of its total expenditures necessarily made in performing the work pursuant to the performance bond, and in discharging its liabilities under the payment bond of the Principal, and any amounts otherwise recoverable by the Surety from or against the Principal pursuant to that certain Agreement of Indemnity dated April 24, 2003, up to the full amount of the contract balance, as adjusted. Furthermore, payments to the Surety to reimburse it for discharging its liabilities under the payment bond of the Principal shall be only on authority of (i) mutual agreement between the Government and the Surety, or (ii) determination of the Comptroller General as to payee and amount, or (iii) order of a court of competent jurisdiction.

C. Except as expressly provided herein, nothing in this Takeover Agreement shall be construed as a waiver or release of any rights of the Government against the Principal or the Surety, including but not limited to liquidated damages for delays in completion of the work, except to the extent that such delays may be excused under the provisions of the Contract.

D. Except as expressly provided herein, nothing in this Takeover Agreement shall be construed as a waiver or release of any rights of the Surety or Principal against the Government.

3. Nothing contained in this Takeover Agreement constitutes a waiver of the bond penalty of the performance bond or the payment bond, or an increase in the liability of the Surety under the performance bond or the payment bond. It is expressly understood and agreed that the limit of the Surety's liability under the performance bond and this Takeover Agreement, including but not limited to all payments made to any completion contractor by the Surety, is strictly limited to ONE MILLION FOUR HUNDRED THIRTY FIVE THOUSAND THREE HUNDRED AND 00/100 Dollars ($1,435,300.00) beyond the amount of the contract balance actually paid to and received by the Surety. All payments made by the Surety, over and above the contract balance paid to and received by the Surety to perform the work called for in the Contract, shall be credited against the bond penalty of the performance bond. Once, and in the event that the penal sum of the performance bond has been fully expended, neither the Surety nor any completing contractor shall have any further obligations to the Government in connection with the project, the performance bond, this Takeover Agreement or the Contract.

4. Nothing contained in this Takeover Agreement shall be deemed to limit or abrogate any rights of the Surety acquired through subrogation or applicable law.

5. The Government agrees that the Surety may elect to utilize the Principal to perform work called for in the Contract.

IN WITNESS WHEREOF, the parties hereto have executed this Takeover Agreement as of the day and year first above written.

**UNITED STATES SURETY COMPANY**

By: [signature]
Richard E. Klein, President

**AMERICAN CONTRACTORS INDEMNITY COMPANY**

By: [signature]
Richard E. Klein, Executive Vice President

**UNITED STATES OF AMERICA**

By: [signature]
CHERYL F. DRUM, CONTRACTING OFFICER

# EXHIBIT B

HCC SURETY GROUP

20 W. Aylesbury Road, P.O.Box 5605, Timonium, Maryland 21094 Telephone: (410) 453-9522 Fax: (410) 453-9523 Website: www.hccsurety.com

January 11, 2007

Charlotte Hofstetter, Contracting Officer
Department of the Army
Norfolk District Corps of Engineers
Fort Norfolk
803 Front Street
Norfolk, VA 23510-1096

Re: Claim of United States Surety Company

| | |
|---|---|
| Contract No.: | DACW91236-05-C-0039 |
| Project: | Maintenance Dredging and Realignment of Lynnhaven Inlet, Bay and Connecting Waters, Virginia Beach, VA |
| Bond No.: | 9950 |
| Original Contractor: | Woodside Construction, Inc. |
| Surety: | United States Surety Company and American Contractors Indemnity Company, as co-sureties |

Dear Ms. Hofstetter:

United States Surety Company and American Contractors Indemnity Company, as co-sureties, submit this claim pursuant to the disputes provision of the above-referenced contract, and state as follows:

1. On or about April 22, 2005, the United States Government ("Government") and Woodside Construction, Inc. ("Woodside") entered into Contract No. DACW91236-05-C-0039 (the "Contract") for Maintenance Dredging, Lynnhaven River, Virginia Beach, VA (the "Project").

2. Pursuant to the Contract, Woodside, as principal, and United States Surety Company and American Contractors Indemnity Company, as co-sureties (the "Surety"), provided performance and payment bonds, both numbered 9950, and both in the penal sum of One Million Four Hundred Thirty Five Thousand Three Hundred Dollars ($1,435,300.00), with the Government as obligee.

3. By letter dated December 22, 2005, the Government terminated Woodside for default under the provisions of the Contract, and called upon the Surety to cause completion of the performance of the work called for on the Project pursuant to its obligations under the Performance Bond.

4. On or about December 30, 2005, the Government and the Surety entered into a Takeover Agreement. A copy of the Takeover Agreement is attached hereto and incorporated herein as Exhibit A.

5. Pursuant to paragraph 2 of the Takeover Agreement, the parties agreed, in relevant part, as follows:

> 2. The Government agrees to pay the Surety in the manner provided by the Contract, the unearned contract balance of $800,362.80, earned retainage of $8,085.00 and earned but unpaid Contract funds of $80,394.48, subject to the following conditions:
>
> > A. All unpaid earnings of the Principal, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the Principal arising from the project, **except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the performance of or payment for the work called for in the Contract.** (Emphasis added).
> >
> > C. **Except as expressly provided herein,** nothing in this Takeover Agreement shall be construed as a waiver or release of any rights of the Government against the Principal or Surety, including but not limited to liquidated damages for delays in completion of the work, except to the extent that such delays may be excused under the provisions of the Contract.

6. As of the date of the Takeover Agreement, the unearned balance of the Contract, as set forth in the Takeover Agreement, was as follows:

| | |
|---|---|
| Unearned contract balance: | $800,362.80 |
| Earned retainage: | 8,085.00 |
| Earned but unpaid contract funds: | 80,394.48 |
| **Remaining Contract Balance** | **$888,842.28** |

Accordingly, the amount of unpaid earnings pursuant to the Contract as of December 22, 2005, are in the amount of Eighty Eight Thousand Eight Hundred Seventy Nine Dollars and Forty Nine Cents ($88,879.49).

7. The Surety incurred and paid the aggregate sum of One Million Two Hundred Forty Four Thousand Nine Hundred Twenty Seven and 74/100 Dollars ($1,244,927.74) less amounts received from the Department of the Army in the amount of Five Hundred Two Thousand Sixty Six and 80/100 Dollars ($502,066.80). Therefore, the net amount incurred by

the surety in performing its obligations pursuant to the Takeover Agreement and the Performance Bond was Seven Hundred Forty Two Thousand Eight Hundred Sixty and 94/100 Dollars ($742,860.94).

8. The Government assessed the aggregate amount of One Hundred Twenty Two Thousand Eight Hundred Dollars ($120,400.00) in liquidated damages, and deducted that amount, from payments due under the Takeover Agreement. Liquidated damages were assessed as follows:

10/3/05 (Contract Completion Date) – 12/22/05 (Date of Termination) = 80 days
x $400/day
$32,000.00

The remaining $88,400.00 in LD's were assessed for days following the date of termination and are therefore, are not pertinent to this Claim.

9. Pursuant to the express terms of the Takeover Agreement, the Government agreed that all unpaid earnings under the Contract were subject to claims by the Government (including claims for Liquidated Damages) **except in the event that** those unpaid earnings were needed by the Surety to pay for "actual costs and expenses incurred in the performance of or payment for the work called for in the Contract." As stated above, the Surety incurred actual costs and expenses of $742,860.94. Therefore, the $32,000.00 that was assessed as Liquidated Damages, beginning on the Contract Completion Date and ending on the Date of Termination, qualifies under the exclusion set forth in Paragraph 2 of the Takeover Agreement and should be paid to the Surety.

The Surety requests a Contracting Officer's written decision within 60 days of the date of this claim.

Regards,

Emily A. Brennan, Esq.

cc: Robert L. Oswald, Esquire
Mr. Andrew J. Reid

# TAKEOVER AGREEMENT

THIS TAKEOVER AGREEMENT, entered into this 30th day of December, 2005, by and between the United States of America (hereinafter the "Government"), represented by the Contracting Officer signing this Agreement, and United States Surety Company and American Contractors Indemnity Company, as Co-Sureties (the "Surety").

WITNESSETH THAT:

WHEREAS, on April 22, 2005, the Government and Woodside Construction, Inc. (the "Principal") entered into Contract No. DACW91236-05-C-0039, for Maintenance Dredging, Lynnhaven River, Virginia Beach, Virginia Beach, Virginia (hereinafter the "Contract");

WHEREAS, pursuant to the Contract, the Principal and Surety executed performance and payment bonds in the amounts of ONE MILLION FOUR HUNDRED THIRTY FIVE THOUSAND THREE HUNDRED AND 00/100 DOLLARS ($1,435,300.00) and ONE MILLION FOUR HUNDRED THIRTY FIVE THOUSAND THREE HUNDRED AND 00/100 DOLLARS ($1,435,300.00), Bond Nos. 9950, respectively;

WHEREAS, by letter dated December 22, 2005, the Government terminated the Principal for default under the provisions of the Contract, for failure to complete the work timely under the Contract;

WHEREAS, THE Surety will undertake the completion of the Contract in accordance with the terms of the Performance Bond, the contract and this Agreement, provided that the Surety will receive the entire remaining contract balance as more fully defined and set forth below.

WHEREAS, all materials, appliances and equipment of any type remaining on the job site are available for use to the Surety's completing contractor; and

WHEREAS, it is found advantageous and in the best interest of the Government to modify the Contract in accordance with the foregoing:

NOW THEREFORE, in consideration of the foregoing, the Contract is hereby modified in the following particulars, but in no others:

1. Pursuant to its performance bond, the Surety will take over and cause performance of the work remaining to be performed under the Contract in accordance with the provisions thereof, and as limited and conditioned by this Takeover Agreement.

2. The Government agrees to pay the Surety in the manner provided by the Contract, the unearned contract balance of $800,362.80, earned retainage of $8,085.00 and earned but unpaid Contract funds of $80,394.48, subject to the following conditions:

A. All unpaid earnings of the Principal, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the Principal arising from the project, except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the performance of or payment for the work called for in the Contract.

B. Except in the event that the Surety may become entitled to additional compensation pursuant to the terms of the Contract (e.g., claims, change orders or extras, etc.), the Surety shall not be entitled to be paid any amount in excess of its total expenditures necessarily made in performing the work pursuant to the performance bond, and in discharging its liabilities under the payment bond of the Principal, and any amounts otherwise recoverable by the Surety from or against the Principal pursuant to that certain Agreement of Indemnity dated April 24, 2003, up to the full amount of the contract balance, as adjusted. Furthermore, payments to the Surety to reimburse it for discharging its liabilities under the payment bond of the Principal shall be only on authority of (i) mutual agreement between the Government and the Surety, or (ii) determination of the Comptroller General as to payee and amount, or (iii) order of a court of competent jurisdiction.

C. Except as expressly provided herein, nothing in this Takeover Agreement shall be construed as a waiver or release of any rights of the Government against the Principal or the Surety, including but not limited to liquidated damages for delays in completion of the work, except to the extent that such delays may be excused under the provisions of the Contract.

D. Except as expressly provided herein, nothing in this Takeover Agreement shall be construed as a waiver or release of any rights of the Surety or Principal against the Government.

3. Nothing contained in this Takeover Agreement constitutes a waiver of the bond penalty of the performance bond or the payment bond, or an increase in the liability of the Surety under the performance bond or the payment bond. It is expressly understood and agreed that the limit of the Surety's liability under the performance bond and this Takeover Agreement, including but not limited to all payments made to any completion contractor by the Surety, is strictly limited to ONE MILLION FOUR HUNDRED THIRTY FIVE THOUSAND THREE HUNDRED AND 00/100 Dollars ($1,435,300.00) beyond the amount of the contract balance actually paid to and received by the Surety. All payments made by the Surety, over and above the contract balance paid to and received by the Surety to perform the work called for in the Contract, shall be credited against the bond penalty of the performance bond. Once, and in the event that the penal sum of the performance bond has been fully expended, neither the Surety nor any completing contractor shall have any further obligations to the Government in connection with the project, the performance bond, this Takeover Agreement or the Contract.

4. Nothing contained in this Takeover Agreement shall be deemed to limit or abrogate any rights of the Surety acquired through subrogation or applicable law.

5. The Government agrees that the Surety may elect to utilize the Principal to perform work called for in the Contract.

IN WITNESS WHEREOF, the parties hereto have executed this Takeover Agreement as of the day and year first above written.

UNITED STATES SURETY COMPANY

By: ______________________
Richard E. Klein, President

AMERICAN CONTRACTORS INDEMNITY COMPANY

By: ______________________
Richard E. Klein, Executive Vice President

UNITED STATES OF AMERICA

By: ______________________

# EXHIBIT C

DEPARTMENT OF THE ARMY
NORFOLK DISTRICT, CORPS OF ENGINEERS
FORT NORFOLK, 803 FRONT STREET
NORFOLK, VIRGINIA 23510-1096

Rec. by Cert Mail
7/23/07
[initials]

REPLY TO
ATTENTION OF:

July 18, 2007

Office of Counsel

*CERTIFIED MAIL – RETURN RECEIPT REQUESTED*

United States Surety Company
20 West Aylesbury Road
Timonium MD 21094
Attn: Richard E. Klein, President

American Contractors Indemnity Company
c/o Richard E. Klein, Executive Vice President
20 West Aylesbury Road
Timonium, MD 21094

Gentlemen:

With reference to your Contract Number W91236-05-C-0039, Maintenance Dredging, Lynnhaven River, Virginia Beach, Virginia, I have reviewed your letter of and other correspondence wherein you claim entitlement to the amount of liquidated damages withheld for late completion. I am unable to accept your position.

**SUMMARY OF CLAIM**

You claim that the Government should not withhold liquidated damages in accordance with the contract terms for late completion because, according to your argument, the parties agreed in the Takeover Agreement that the Government would not assess any liquidated damages if you needed those contract earnings to offset any performance expenses incurred under your performance bond obligation. My investigation has resulted in the following:

**FINDINGS OF FACT**

1. On April 22, 2005, the U.S. Army Corps of Engineers, Norfolk District, Norfolk, Virginia (the "Corps" or "Government") awarded Contract No. W91236-05-C-0039 for the Maintenance Dredging, Lynnhaven River, Virginia Beach, Virginia, to Woodside Construction, Inc. ("Woodside"). **Exhibit 3.**

2. After award, Woodside provided the requisite payment and performance bonds, as required by the contract, executed by the two co-sureties and Woodside. **Exhibit 4.**

3. On December 22, 2005, the contracting officer terminated Woodside for default, pursuant to the terms of the contract, for untimely performance. **Exhibit 5.**

4. By facsimile cover sheet dated December 29, 2005, the Government transmitted the Takeover Agreement signed by the contracting officer to Richard E. Klein of United States Surety Company, stating: "As you know, the numbers in paragraph 2 are subject to the assessment of Liquidated Damages." **Exhibit 6.**

5. Thereafter, on December 30, 2005, the co-sureties signed the Takeover Agreement whereby the co-sureties would undertake to complete the contract work, under the terms and conditions of the contract. Richard E. Klein signed the agreement on behalf of both co-sureties. **Exhibit 7.** The Takeover Agreement provides, in part, as follows:

> 2. The Government agrees to pay the Surety in the manner provided by the Contract, the unearned contract balance of $800,362.80, earned retainage of $8,085,00 and earned but unpaid Contract funds of $80,394.48, subject to the following conditions:
>
> A. All unpaid earnings of the Principal, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the Principal arising from the project, except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the performance of or payment for the work called for in the Contract.
>
> * * *
>
> C. Except as expressly provided herein, nothing in this Takeover Agreement shall be construed as a waiver or release of any rights of the Government against the Principal or the Surety, including but not limited to liquidated damages for delays in completion of the work, except to the extent that such delays may be excused under the provisions of the Contract.

6. A series of e-mails ensued on January 3, 2006, between Mr. Klein of the co-sureties and Andrew Reid, the Authorized Representative of the Contract Officer, regarding amounts currently due to be paid and other administrative matters. Mr. Reid informed Mr. Klein of the amount and that liquidated damages of $13,200 ($400 per

day for 33 days) would be assessed and deducted for that pay period. Mr. Klein responded to Mr. Reid by providing certain requested information and raising some questions regarding the calculation of pay quantities and earned amount. Mr. Klein did not question the validity of the Government's assessment of and deduction for liquidated damages. **Exhibit 8.**

7. By letter dated January 11, 2007, the surety group requested a final decision of the contracting officer, challenging any deduction for liquidated damages since all earnings payable were needed by the surety to offset its incurred actual costs and expenses of completing the work. **Exhibit 9.**

## ANALYSIS

8. Nothing in the Takeover Agreement states that the Government will not assess Liquidated Damages under any circumstances for unexcused late performance. The assessment of liquidated damages is not a Government "claim" against the Principal, Woodside, arising from the project. The Government assesses liquidated damages under the terms of the contract which the surety has taken over.

9. Further, the contracting officer herself cannot "waive" liquidated damages and did not attempt to do so in the Takeover Agreement.

10. The Government made it clear immediately before and after the execution of the Takeover Agreement that liquidated damages would be assessed for late performance unless excused by the terms of the contract.

## DETERMINATION

11. Based on the foregoing, the co-sureties are not entitled to contract payments free of the assessment of liquidated damages for late completion of the contract work. Therefore, the co-sureties' claim for the amounts assessed for liquidated damages is denied in its entirety as without merit.

## CONCLUSION

12. This is the Final Decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals.

13. If you decide to make such an appeal, you must, within ninety (90) days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals and provide a copy to the Contracting Officer from

whose decision the appeal is taken. The notice shall indicate that an appeal is intended, shall reference this decision, and identify the contract by number.

14. In appeals where the amount in dispute is $50,000 or less or, in the case of a small business concern (as defined in the Small Business Act and regulations under that Act), $150,000 or less, the appellant may elect to have the appeal processed under the Board of Contract Appeals small claims (expedited) procedure, or under their accelerated procedure for claims $100,000 or less.

15. In lieu of appealing to the cognizant Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims within 12 months of the date you receive this decision.

Sincerely,

Charlotte Hofstetter

Charlotte G. Hofstetter
Contracting Officer

Enclosure
List of Exhibits

## LIST OF EXHIBITS

1.

2.

3. Contract Number W61239-05-C-0039, Maintenance Dredging, Lynnhaven River, Virginia Beach, Virginia.

4. Performance and Payment Bonds, Contract Number W61239-05-C-0039.

5 Letter, Charlotte G. Hofstetter, Contracting Officer, to Woodside Construction, Inc., December 5, 2005.

6. U.S. Army Corps of Engineers, Norfolk District, Facsimile Cover Sheet, to Richard E. Klein, United States Surety Company, December 29, 2005.

7. Takeover Agreement, December 30, 2005.

8. E-Mail String, January 3, 2006, between Mr. Klein and Mr. Reid.

9. Letter, HCC Surety Group to Charlotte Hofstetter, Contracting Officer, January 11, 2007.