**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| UNITED STATES SURETY COMPANY, et al | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | No. 07-638C (Judge Block) |
| THE UNITED STATES | * | |
| Defendant | * | |

* * * * * * * * * * * *

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND CROSS MOTION FOR SUMMARY JUDGMENT**

United States Surety Company and American Contractors Indemnity Company, Plaintiffs, by their undersigned counsel, oppose the Defendant's Motion to Dismiss and Move for Summary Judgment in their favor and against the United States and as reasons therefor state as follows:

## I. The Terms Used in Takeover Agreements Between the Government and Completing Sureties are Mandated by the Federal Acquisition Regulations

48 C.F.R. § 49.404 allows a performance bond surety to enter into a takeover agreement with the government when the surety elects to complete its defaulted principal's contract. 48 C.F.R. 49.404(e)(1) states:

> Any takeover agreement must require the surety to complete the contract and the Government to pay the surety's costs and expenses up to the balance of the contract price unpaid at the time of default, subject to the following conditions:
>
> (1) Any unpaid earnings of the defaulting contractor, including retained percentages and progress estimates for work accomplished before termination, must be subject to debts due the Government by the contractor, except to the extent that the unpaid earnings may be used to pay the

> completing surety its actual costs and expenses incurred in the completion of the work, but not including its payments and obligations under the payment bond given in connection with the contract.

Paragraph 2(A) of the Takeover Agreement between the Plaintiffs and the Government dated December 30, 2005 (the "Takeover Agreement") states:

> 2. The Government agrees to pay the Surety in the manner provided by the Contract, the unearned contract balance of $800,362.80, earned retainage of $8,085.00 and earned but unpaid Contract funds of $80,394.48, subject to the following conditions:
>
> A. All unpaid earnings of the Principal, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the Principal arising from the project, except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the performance of or payment for the work called for in the Contract.

This language is virtually identical to the language of 48 C.F.R. § 49.404(e)(1). 48 C.F.R. § 49.404 states that this language "must" be included in any takeover agreement entered into between the government and a completing performance bond surety. When the word "must" is used in a statute it "does not allow for any choice. It means compulsion, obligation, requirement." Mallory v. Harkness, 895 F.Supp. 1556, 1564 (S.D.Fla. 1995).

The government contends in its Motion to Dismiss that the contracting officer neither possessed nor sought the authority to remit the liquidated damages that were assessed by the government against Woodside Construction prior to its termination. This argument is unavailing. The contracting officer did not need permission to insert this

language into the Takeover Agreement, he had no choice but to insert the language into the Takeover Agreement. Being left with no choice but to use the language mandated by statute, the contracting agency, in this case the Army Corps of Engineers, must abide by the mandatory provisions. The fact that those provisions relieve the Plaintiffs from liability for some of the liquidated damages assessed by the government does not render the provisions in violation of the statues cited by the government in its Motion to Dismiss.

**II. The Use by the Government of its Rights of Set Off to Assess Liquidated Damages Against the Plaintiffs is Improper.**

The government possesses the common law right of setoff to satisfy debts owed to it. Johnson v. All-State Const., Inc., 329 F.3d 848, 852 (Fed.Cir. 2000). The setoff right applies to government claims both under other contracts, and under the same contract. Id. (citations omitted). When the government withheld the money at issue in this case from the Plaintiffs to satisfy part of its claim for liquidated damages, it was employing its common law right to setoff.

"[W]hen a performance bond surety and the Government enter into a formal take-over agreement, a setoff is not to be permitted against the retained funds claimed by the performance bond surety." Security Ins. Co. of Hartford v. U. S., 192 Ct.Cl. 754, 428 F.2d 838 (1970). When a performance bond surety undertakes to complete its principal's work, it "is not only a subrogee of the contractor, and therefore a creditor, but also a subrogee of the government and entitled to any rights the government has to the retained funds." Id. "The surety who undertakes to complete the project is entitled to the funds in the hands of the government not as a creditor and subject to setoff, but as a subrogee having the same rights to the funds as the government." Id.

In the Security Ins. Co. of Hartford case cited above, the United States Court of Claims examined the language of 32 C.F.R. § 18.618-5 (1970) which stated as follows:

> …The agreement shall provide that the surety will undertake to complete the work required by the contract in accordance with all the terms and conditions of the contract, and that the Government will pay the surety in the manner provided by the contract, but not in excess of the surety's costs and expenses, the balance of the contract price unpaid at the time of default; subject, however, to the following conditions:
> (1) Any unpaid earnings of the defaulting contractor, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the contractor, except to the extent that such unpaid earnings may be required to permit payment to the completing surety of its actual costs and expenses incurred in the completion of the work, exclusive of its payments and obligations under the payment bond given in connection with the contract.

This language is nearly identical to the provisions of 48 C.F.R. § 49.404 and paragraph 2(A) of the Takeover Agreement. In construing the effect of this language, the United States Court of Claims stated that, "The clear purport of these regulations is that…when a performance bond surety and the Government enter into a formal take-over agreement, a setoff is not to be permitted against the retained funds claimed by the performance bond surety." Security Ins. Co. of Hartford, 428 F.2d at 843.

The government has used its right of setoff against the Plaintiffs to retain funds it claims that it is entitled to retain as liquidated damages. The cases cited above make it clear that the government has no right to setoff against a performance bond surety that completes a project for the government. Therefore, the government has improperly used its right of setoff and retained Thirty Two Thousand Dollars ($32,000) from its payments

to the Plaintiffs for liquidated damages it claims are due based upon delays experienced prior to the termination of Woodside Construction.

## III. There are No Genuine Issues as to Any Material Facts and the Plaintiffs are Entitled to Judgment as a Matter of Law.

### A. Standard of Review

This Court may grant summary judgment in favor of a party "if ... [the record] shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). "Summary judgment is not a disfavored shortcut, but rather is an integral part of the Court's rules designed to secure a just, speedy and inexpensive determination of the facts." Spirit Leveling Contractors v. United States, 19 Cl.Ct. 84 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)). "Contract interpretation is a matter of law and thus is amenable to decision on summary judgment." Gov. Sys. Advisors, Inc. v. United States, 847 F.2d 811, 812 n. 1 (Fed. Cir. 1988).

### B. There are No Material Facts in Dispute

The following material facts are not in dispute in this case:

- On April 22, 2005, the United States Government ("Government") and Woodside Construction, Inc. ("Woodside") entered into Contract No. DACW91236-05-C-0039 (the "Contract") for Maintenance Dredging, Lynnhaven River, Virginia Beach, VA (the "Project"). See Joint Preliminary Status Report filed by the parties to this case at § (g).
- Pursuant to the Contract, Woodside, as principal, and United States Surety Company and American Contractors Indemnity Company, as co-sureties (collectively, the "Surety"), provided performance and payment bonds, both

numbered 9950, and both in the penal sum of One Million Four Hundred Thirty Five Thousand Three Hundred Dollars ($1,435,300.00), with the Government as obligee. See Joint Preliminary Status Report filed by the parties to this case at § (g).

- By letter dated December 22, 2005, the Government terminated Woodside for default under the provisions of the Contract, and called upon the Surety to complete the performance of the work called for on the Project pursuant to its obligations under the Performance Bond. See Joint Preliminary Status Report filed by the parties to this case at § (g).
- On or about December 30, 2005, the Government and the Surety entered into a Takeover Agreement. See Joint Preliminary Status Report filed by the parties to this case at § (g).
- Paragraph 2 of the Takeover Agreement states as follows:

> 2. The Government agrees to pay the Surety in the manner provided by the Contract, the unearned contract balance of $800,362.80, earned retainage of $8,085.00 and earned but unpaid Contract funds of $80,394.48, subject to the following conditions:
>
> A. All unpaid earnings of the Principal, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the Principal arising from the project, except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the performance of or payment for the work called for in the Contract.
>
> C. Except as expressly provided herein, nothing in this Takeover Agreement shall be

> construed as a waiver or release of any rights of the Government against the Principal or Surety, including but not limited to liquidated damages for delays in completion of the work, except to the extent that such delays may be excused under the provisions of the Contract.

See Joint Preliminary Status Report filed by the parties to this case at § (g).

- As of the date of the Takeover Agreement, the unearned balance of the Contract, as set forth in the Takeover Agreement, was as follows:

| | |
|---|---|
| Unearned contract balance: | $800,362.80 |
| Earned retainage: | 8,085.00 |
| Earned but unpaid contract funds: | 80,394.48 |
| **Remaining Contract Balance** | **$888,842.28** |

See Joint Preliminary Status Report filed by the parties to this case at § (g).

- As of December 22, 2005, Woodside had earned, but the Government had not paid, Eighty Eight Thousand Eight Hundred Seventy Nine Dollars and Forty Eight Cents ($88,879.48). See Joint Preliminary Status Report filed by the parties to this case at § (g).

- The Government assessed the total, aggregate amount of One Hundred Twenty Two Thousand Eight Hundred Dollars ($122,800.00) in liquidated damages, and has withheld that amount from payments due the Surety under the Takeover Agreement. See Joint Preliminary Status Report filed by the parties to this case at § (g).

- Of the total amount of liquidated damages calculated and withheld by the Government from the Surety, Thirty Two Thousand Dollars ($32,000.00) was withheld for the period of time prior to the termination of Woodside and the

execution of the Takeover Agreement between the Surety and the Government. See the Answer of the United States filed in this case at ¶ 16.

**C. The Reasons Set Forth in Sections I and II of this Pleading Require Entry of Summary Judgment in Favor of the Plaintiffs.**

As set forth above, the clause of the Takeover Agreement at issue in this case is mandated by the Federal Acquisition Regulations. That language has been interpreted by the former Court of Claims in the Security Ins. Co. of Hartford case to mean that no set-off is allowed to be asserted against a performance bond surety that undertakes to finish the work of its principal. As the Plaintiff's completed the scope of work of their principal, Woodside, the government was not allowed to employ its right of setoff against the funds already earned by Woodside but not paid before Woodside was terminated. Therefore, the government's withholding of Thirty Two Thousand Dollars ($32,000) from the Plaintiff's was wrongful and Plaintiffs are entitled to judgment as a matter of law in the amount of Thirty Two Thousand Dollars ($32,000).

WHEREFORE, United States Surety Company and American Contractors Indemnity Company, Plaintiffs, respectfully request that this Court deny the Motion to Dismiss of the United States and grant the Motion for Summary Judgment of the Plaintiff's in the amount of Thirty Two Thousand Dollars ($32,000) plus prejudgment and postjudgment interest and any and further relief as this Court may deem appropriate.

/s/

Patrick M. Pike
Sean P. Foley
Goldberg, Pike & Besche, P.C.
100 South Charles Street
Tower II, Suite 1001
Baltimore, Maryland 21201
(410) 539-1004 (phone)
(410) 539-2392 (fax)

*Counsel for United States Surety Company and American Contractors Indemnity Company*