# In the United States Court of Federal Claims

**No. 07-638 C**
**August 28, 2008**

---

**UNITED STATES SURETY COMPANY, *et al*,**

***Plaintiffs*,**

**v.**

**THE UNITED STATES OF AMERICA,**

***Defendant*.**

**Suretyship; Liquidated Damages; *Sua Sponte* Grant of Summary Judgment**

---

*Patrick M. Pike,* Goldberg, Pike & Besche, P.C., Baltimore, MD.

*Leslie C. Ohta,* United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC.

## OPINION AND ORDER

**Block, *Judge*.**

### I. INTRODUCTION

Plaintiffs, United States Surety Company and American Contractors Indemnity Company, are Miller Act[1] co-sureties that provided performance and payment bonds for Woodside Construction, Inc. ("Woodside") on its dredging contract with defendant, the United States. When Woodside was terminated for default, plaintiffs entered into a formal takeover agreement with the government and performed the remainder of the dredging contract. At issue in this case is whether plaintiffs, having completed the contract pursuant to the takeover agreement, possess a superior right to earned but withheld funds, as compared to the government's entitlement to liquidated damages from these same funds.

---

[1] 40 U.S.C. § 3131. The Miller Act requires prime contractors to post bonds on federal construction contracts.

Defendant has moved to dismiss the case for failure to state a claim pursuant to Rules Court of Federal Claims ("RCFC") 12(b)(6) and, in response, plaintiffs moved for summary judgment under RCFC 56. For the reasons set forth below, this Court does not reach the merits of the defendant's 12(b)(6) motion, but instead *sua sponte* grants summary judgment in favor of the government.

## II. FACTUAL BACKGROUND[2]

The following facts for this summary judgment motion are undisputed. On April 22, 2005, the U.S. Army Corps of Engineers ("Corps") entered into a dredging contract with Woodside. Compl. ¶ 5; PPFUF ¶ 1; DRPFUF ¶ 1. As required in the contract, Woodside obtained performance and payment bonds in the amount of $1,435,300.00 from plaintiffs. Compl. ¶ 6; PPFUF ¶ 2; DRPFUF ¶ 2.

On December 22, 2005, the government terminated the contract with Woodside for default and called upon plaintiffs to complete performance of the contract pursuant to the obligations of their performance bond. Compl. ¶ 7; PPFUF ¶ 3; DRPFUF ¶ 3. At the time, Woodside had earned, but the government had not paid, $88,879.48 on the contract.[3] PPFUF ¶ 7; DRPFUF ¶ 7.

On or about December 30, 2005, the government and plaintiffs entered into a takeover agreement, which provides in part:

> 2. The Government agrees to pay the Surety in the manner provided by the Contract, the unearned balance of $800,362.80, earned retainage of $8,085.00 and earned but unpaid contract funds of $80,394.48, subject to the following conditions:
>
> A. All unpaid earnings of the Principal, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the Principal arising from the project, except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the performance of or payment for the work called for in the Contract.
>
> * * *
>
> C. Except as expressly provided herein, nothing in this Takeover Agreement shall be construed as a waiver or release of any rights of the Government against the Principal or the Surety, including but not

[2] These facts are from the following sources: (1) Plaintiffs' Proposed Findings of Uncontroverted Fact ("PPFUF"); (2) Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Fact ("DRPFUF"); and (3) the Complaint.

[3] The Complaint at paragraph 11 identifies this amount as $88,879.49, a difference of one cent.

> limited to liquidated damages for delays in completion of the work, except to the extent that such delays may be excused under the provisions of the Contract.

Compl. Ex. A. at 2.

The government assessed and withheld from plaintiffs $122,800.00 in liquidated damages, $32,000.00 of which it withheld for the period of time prior to the termination of Woodside. Compl. ¶¶ 15–16; PPFUF ¶¶ 8–9; DRPFUF ¶¶ 8–9.

On January 11, 2007, plaintiffs filed a claim with the Contracting Officer ("CO") for $32,000.00, stating that "the $32,000.00 . . . assessed as [l]iquidated [d]amages . . . qualifies under the exclusion set forth in Paragraph 2[A] of the Takeover Agreement and should be paid to the Surety." Compl. Ex. B ¶ 9. The CO denied plaintiffs' claim in a final decision dated July 18, 2007. Compl. Ex. C. Subsequently, on August 28, 2007, plaintiffs brought suit in this Court seeking relief in the amount of $32,000.00. Compl. 5.

## III. SUMMARY OF THE PARTIES' POSITIONS

The thrust of plaintiffs' argument is that the government's claim to liquidated damages was extinguished by the terms of the takeover agreement recited above. Compl. ¶¶ 17–18. In addition, plaintiffs characterize the government's withholding of liquidated damages as a set-off, and argue on the strength of *Security Ins. Co. of Hartford v. United States*, 428 F.2d 838 (Ct. Cl. 1970) that once "a performance bond surety and the government enter into a formal takeover agreement, a set-off is not to be permitted against the retained funds claimed by the performance bond surety." Pls' Opp'n to Def.'s Mot. to Dismiss 3–5. The government counters that it did not exercise its right of set-off, but that even if it were exercising such a right, plaintiffs' reliance on *Security* is misplaced because *Security* dealt with a claim wholly unrelated to the performance of the bonded contract. Def.'s Reply to Pl.'s Opp'n 5–6. Lastly, the government argues that the terms of the takeover agreement could not have extinguished the government's entitlement to liquidated damages because the CO lacked the authority to make such a concession on behalf of the government. Def.'s Mot. to Dismiss 4–5.

## IV. DISCUSSION

### A. Jurisdiction

The Tucker Act grants this Court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)). The plaintiff must also "assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which

supports a claim for damages against the United States." *Khan v. United States*, 201 F.3d 1375, 1378 (Fed. Cir. 2000) (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998)).

The Contract Disputes Act of 1978 ("CDA") is such a money-mandating statute. It authorizes this Court to adjudicate a claim for monetary damages arising from "any express or implied contract . . . entered into by an executive agency for . . . the procurement of construction, alteration, repair or maintenance of real property" filed within twelve months of a contracting officer's final decision concerning the claim. 41 U.S.C. §§ 602(a)(3), 609(a).

Here, plaintiffs entered into an express contract with the government in the form of a takeover agreement. Plaintiffs asserted a claim for monetary damages under this agreement, which the contracting officer denied in a final decision less than twelve months before plaintiffs filed suit in this court. Because plaintiffs are suing on an express contract with the government in accordance with the provisions of the CDA, this court has jurisdiction.

Moreover, plaintiffs, as Miller Act co-sureties completing performance on a government contract under a performance bond, also have standing to bring suit in this Court under the doctrine of equitable subrogation. *See Prairie State Nat'l Bank of Chicago v. United States*, 164 U.S. 227, 231–33 (1896); *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001); *Aetna Cas. & Sur. Co. v. United States*, 845 F.2d 971, 975 (Fed. Cir. 1988); *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160–61 (Fed. Cir. 1985).

**B. Standard for Granting Summary Judgment**

A court may only grant summary judgment to the moving party where there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c). However, a court may also grant summary judgment in favor of the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[Under FED. R. CIV. P. 56], district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of its evidence); *Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1572 (Fed. Cir. 1997) ("In many cases, where the factual record has been well developed before the summary judgment stage, the grant of summary judgment to the non-movant may well be the most efficient manner to decide a case."); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720 (2008). Whenever a court believes that the nonmoving party is entitled to judgment, the court must first ensure that the original movant has had an adequate opportunity to show that there is a genuine issue and that the opponent is not entitled to judgment as a matter of law. 10A FEDERAL PRACTICE AND PROCEDURE § 2720. A court will view all inferences drawn from the underlying facts in a light most favorable to the party against whom summary judgment is to be entered. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As stated above, the facts in this case are not in dispute. The government has admitted to each and every proposed finding of fact asserted by plaintiffs. DRPFUF 1–4. The only legal issue raised by plaintiffs is "[w]hether the language of paragraph 2(A) of the Takeover Agreement prevents the [government] from withholding liquidated damages from sums earned by Woodside

prior to its termination[.]" Joint Prelim. Status Report 4. Plaintiffs' motion for summary judgment argues this very point. Because it is on this point that the Court awards summary judgment to the non-movant government, this Court is comfortable that plaintiffs are not procedurally prejudiced.

**C. Resolution of the Disputed Issue**

A suretyship is the result of a three party agreement, whereby one party, the surety, becomes liable for the obligor's debt or duty to the third-party obligee. *Ins. Co. of the West*, 243 F.3d at 1370. Where an obligor fails to perform on the contract, the surety is liable for placing the obligee in the same position it would have occupied had the contract been performed. *See Prudence Co. v. Fidelity & Deposit Co.*, 297 U.S. 198, 205 (1936). With regard to consequential damages for delay, "giv[ing] the [obligee] nothing but the cost of doing the unfinished work, plus the loss resulting from omissions and substitutions, would be a scant measure of reparation, allowing nothing for delay." *Id.* at 205–06.

Under Miller Act performance bonds, the surety guarantees that a contract will be completed in the event of the prime contractor's default and that the government will not have to pay more than the contract price. *Ins. Co. of the West*, 243 F.3d at 1370. To this end, the surety has the option of either completing performance of the contract itself or of assuming liability for the government's excess costs in completing the contract. *Id.*

In *Security Ins. Co. of Hartford v. United States*, 428 F.2d 838, 841–42 (Ct. Cl. 1970), the court reviewed a long line of cases tracing back to *Prairie State Nat'l Bank of Chicago v. United States*, 164 U.S. 227 (1896), and held that under the doctrine of equitable subrogation, where a surety takes over contract performance, the surety succeeds to the contractual rights of both the defaulted contractor and the government. As such, the surety is "entitled to the funds in the hands of the government not as a creditor subject to set-off, but as a subrogee having the same right to the funds as the government." *Id.* at 842.

Plaintiffs cite *Security* for the above quoted proposition and posit that because plaintiffs are sureties that have taken over performance on a defaulted contractor's contract, that they are entitled to all withheld funds due on the contract free from the government's right of set-off. Plaintiffs then cite *Johnson v. All-State Constr., Inc.*, 329 F.3d 848, 852 (Fed. Cir. 2000) for the proposition that when the government claims its contractual right to liquidated damages, it is actually exercising its common law right of set-off. To be sure, the court in *Johnson* did characterize the right of set-off as applying to "both government claims under other contracts and under the same contract" and that "the Navy . . . had the right to set-off any amounts due as liquidated damages." *Id.* at 852, 855 (internal citations omitted). Plaintiffs conclude that because they have a right to withheld funds free from set-off and because the withholding of liquidated damages can be characterized as a set-off, that plaintiffs therefore have a right to the withheld funds, free of the government's entitlement to liquidated damages. Plaintiffs' contention is erroneous.

Plaintiffs fail to appreciate the limits of their right to withheld funds free from set-off. A surety which completes a defaulted contract under a performance bond does, indeed, have a right to withheld contract funds free from claims of set-off by the government for debts of the contractor.

*U.S. Forest Serv.*, B-192237, 79-1 CPD ¶ 19 at *1. However, such a right extends only to the unexpended contract balance. *Id.* The unexpended contract balance does not include liquidated damages to which the government is entitled. *Id.*; *Sec. of the Interior*, B-155504, 1965 WL 1952 at *2 ("[I]t is our view that the unexpended contract balance . . . must be reduced by the liquidated damages assessed under the contract concerned and the remainder of the unexpended contract balances may be paid to the completing surety in amounts not to exceed its expenses incurred in completing the contracts for the date of its takeover."). Indeed, the GAO has cited the very case upon which plaintiffs rest their argument, *Security Ins. Co. of Hartford*, for this proposition:

> [A] surety completing a defaulted contract under a performance bond has a right to reimbursement from the unexpended contract balance of the expenses it incurs, free from setoff by the Government of the contractor's debts to the Government, less any liquidated damages to which the Government is entitled under the contract.

*Priority to Remaining Proceeds of Contract Between Veterans Admin. & Crane Corp.*, B-225115, 87-1 CPD ¶ 191 at *2. In *Security*, the parties disputed the government's claim for $10,780.98 in federal taxes owed to it by the contractor—a debt that arose independent of the contractor's performance on the bonded contract. 428 F.2d at 840. The plaintiff, in *Security*, did not contend that it had a right to the $5,250.00 in liquidated damages assessed by the government against the contract balance. *Id.* at 839–40. Plaintiffs do not cite and this Court is unaware of a single case in which a surety's claim to withheld funds defeated the government entitlement to liquidated damages from those same funds.

Accepting plaintiffs' argument would ignore the mandate that a surety should place an obligee in the position it would have occupied had the obligor properly performed the contract. *See Prudence Co.*, 297 U.S. at 205. Liquidated damages in government contracts are an amount set by the parties when entering the contract and are used to compensate the government for probable damages resulting from the contract's untimely performance. *See* FAR 11.501(a)–(b). Consequently, liquidated damages are a substitute for the consequential damages incurred as a result of a contractor's breach. If the plaintiff could claim the withheld contract funds free from the government's entitlement to liquidated damages, the government would not be compensated at all for the consequential damages it suffered as a result of Woodside's failure to timely perform.

Having established that the government held a superior right to liquidated damages against the surety prior to the takeover agreement, we must now consider whether the takeover agreement itself forfeited that right. When interpreting a contract, the Court must begin with the plain meaning of the contract's text. *Enron Fed. Solutions v. United States*, 80 Fed. Cl. 382, 393 (2008) (citing *Ace Constructors Inc. v. United States*, 935 F.3d 1357, 1361 (Fed. Cir. 2007); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). In addition, the Court must consider the meaning that reasonable persons acquainted with the contemporaneous circumstances would ascribe to the contract's text. *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir. 1999). Stated another way, context defines a contract and the issues deriving therefrom. *Enron Fed. Solutions*, 80 Fed. Cl. 382 at 394.

The takeover agreement mentions liquidated damages but once at Paragraph 2(C):

> Except as expressly provided herein, *nothing in this Takeover Agreement shall be construed as a waiver or release of any rights of the Government against the Principal or the Surety, including but not limited to liquidated damages for delays in completion of the work*, except to the extent that such delays may be excused under the provisions of the Contract.

(emphasis added).

Thus, the language displays an intent, not to forfeit, but to preserve the government's right to liquidated damages. Plaintiffs, however, seize upon the term "[e]xcept as expressly provided herein" and point to Paragraph 2(A), which states:

> All unpaid earnings of the Principal, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the Principal arising from the project, *except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the performance of or payment for the work called for in the Contract*.

(emphasis added).

It is at this point that one must remember the context in which the contract was formed. The terms at issue in the takeover agreement are not unique. FAR 49.404 (e)(1)–(2) (entitled "Surety Takeover Agreements") provides:

> (e) Any takeover agreement must require the surety to complete the contract and the Government to pay the surety's costs and expenses up to the balance of the contract price unpaid at the time of default, subject to the following conditions:
>
> (1) Any unpaid earnings of the defaulting contractor, including retained percentages and progress estimates for work accomplished before termination, must be subject to debts due the Government by the contractor, except to the extent that the unpaid earnings may be used to pay the completing surety its actual costs and expenses incurred in the completion of the work, but not including its payments and obligations under the payment bond given in connection with the contract.
>
> (2) The surety is bound by contract terms governing liquidated damages for delays in completion of the work, unless the delays are excusable under the contract.

Stated another way, FAR 49.404(e) requires the inclusion of the conditions set forth in 49.404(e)(1) and (2) in any surety-takeover agreement. In light of FAR 49.404(e), it becomes clear that the takeover agreement's terms at Paragraph 2(A) mirror and implement FAR 49.404(e)(1) and that the terms at Paragraph 2(C) mirror and implement FAR 49.404(e)(2). The phrase "except as expressly provided herein" in Paragraph 2(C) does not refer back to the standard language of Paragraph 2(A), but rather to any other unique provisions in the agreement where the government "expressly" relinquishes a right or claim—"expressly," meaning to "clearly and unmistakably communicate[]" using "direct or plain terms." BLACK'S LAW DICTIONARY 620 (8th ed. 2004); 5 OXFORD ENGLISH DICTIONARY 586 (2nd ed. 1989). In other words, because the contract does not contain a provision that *expressly* relinquishes the government's entitlement to liquidated damages, the better view is that the entitlement has not been waived.

This interpretation of takeover agreements, and not plaintiffs', is consistent with a line of Comptroller General decisions dating back to 1979. For instance, in *Priority to Remaining Proceeds of Contract between Veterans Admin. & Crane Corp.*, the GAO held that "[u]nder such takeover agreements, the money available to the surety generally would include all funds held by the Government on the contract, including withheld percentages and progress payments, whether earned prior to or subsequent to the contractor's default, *less any liquidated damages to which the Government is entitled under the contract.*" B-225115, 87-1 CPD ¶ 191 at *2 (emphasis added). *See also* 65 Comp. Gen. 29, 31 (1985); *U.S. Forest Serv.*, B-192237, 79-1 CPD ¶ 19 at *1.

After reviewing the terms of the takeover agreement, the provisions at FAR 49.404(e), and prior precedent, this Court holds that plaintiffs are not entitled to sums withheld by the government as liquidated damages as a matter of law. Accordingly, plaintiffs' motion for summary judgment is **DENIED** and summary judgment is **GRANTED** in favor of defendant. Because summary judgment has been granted in favor of defendant on the above grounds, we need not and do not reach the merits of defendant's argument regarding the authority of the contracting officer. The clerk is directed to dismiss the complaint with prejudice. Each side shall bear its own costs.

**IT IS SO ORDERED.**

s/ Lawrence J. Block
**Lawrence J. Block**
**Judge**